IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JANE DOE<br>      Plaintiff<br><br>v.<br><br>LETOURNEAU UNIVERSITY and<br>BENJAMIN MURPHY<br>      Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:25-CV-00590-JRG-RSP |

**DEFENDANT LETOURNEAU UNIVERSITY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Nothing in Jane Doe's response establishes that she has alleged sufficient facts to support her claims for promissory estoppel and fraud.[1]

**I.      Jane Doe does not state a plausible promissory estoppel claim.**

Jane Doe's promissory estoppel claim should be dismissed. First, Jane Doe emphasizes that courts enforce promissory estoppel when necessary to avoid injustice. But she does not explain why justice or any equitable principle favors her promissory estoppel claim here, where it is clear upon the slightest scrutiny that she raises the claim because she waited too long to raise her allegations under Title IX. Second, even assuming promissory estoppel is available to her, Jane Doe does not allege the elements of definite and specific promises or detrimental reliance.

   A.      <u>Allowing Jane Doe's promissory estoppel claim is not necessary to avoid injustice.</u>

Jane Doe correctly asserts in her Response that the underlying theory of promissory estoppel is to bind parties to promises made outside of contracts "if injustice can be avoided only by

---

[1] Jane Doe voluntarily abandons her breach of contract claim in response to LeTourneau's Motion to Dismiss. ECF No. 16 at 4.

1

enforcement of the promise." ECF No. 16, 11 (citing *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 864 (5th Cir. 1999)). However, recognizing her promissory estoppel claim is not necessary to avoid injustice—it is necessary, from Jane Doe's perspective, to correct her mistake of failing to timely assert Title IX claims. Allowing her to recast Title IX claims under ill-fitting labels to avoid the 2-year limitations period would not promote the ends of justice. It would conflict with established Texas law disfavoring the use of creative pleading to avoid statutory consequences. *See Pitts v. Rivas*, 709 S.W.3d 517, 525 (Tex. 2025) ("[T]he law should not reward artful pleading."); *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) ("We reaffirm that a claimant cannot escape the Legislature's statutory scheme by artful pleading."); *Rodriguez v. Safeco Ins. Co. of Indiana*, No. SA-18-CV-00851-OLG, 2019 WL 650437, at *5 (W.D. Tex. Jan. 7, 2019) (citing *In re Kimball Hill Homes Texas, Inc.*, 969 S.W.2d 522, 526 (Tex. App.—Houston [14th Dist.] 1998, no pet.)) ("Texas courts have 'consistently held that . . . a plaintiff cannot by artful pleading recast a claim in order to avoid the adverse effect of a statute.'").

Because Jane Doe has a remedy under the Title IX statute, recognizing her promissory estoppel claim does not promote interests of justice. The Court should dismiss Jane Doe's artfully pled promissory estoppel claim.

B. <u>Jane Doe does not plausibly allege LeTourneau made specific and definite promises.</u>

Jane Doe's Response points to statements in LeTourneau's Title IX Policy and Student Handbook, including "sexual harassment or sexual misconduct, in any form . . . will not be tolerated at LeTourneau[;]" "it is the policy of LeTourneau University to prohibit unlawful discrimination or harassment[;]" "LeTourneau University will  . . . take appropriate action or discipline against any person who is found to have violated this policy[;]" "The University . . . will promptly and equitably respond to all reports of Sexual Misconduct[;]" and "When the University receives a formal complaint of a potential Policy violation, the University . . . will provide a fair and impartial complaint resolution process." ECF No. 16 at 12. But to be enforced through a suit for promissory estoppel, a promise

2

must be specific and definite. *Comiskey v. FH Partners*, LLC, 373 S.W.3d 620, 635 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The statements she identifies are not definite promises that induce reasonable reliance. They are general and broad expressions of LeTourneau's commitment to comply with Title IX. They are not statements that support a promissory estoppel claim. *Walker v. Walker*, 631 S.W.3d 259, 265 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (Mere speculation about future events, statements of hope, or expressions of opinion, expectation, or assumption are unenforceable.).

Jane Doe questions LeTourneau's characterization of Policy and Handbook statements as expressions of hope and expectation, arguing that, if LeTourneau did not intend to make specific and definite promises, it would have utilized "qualifiers." ECF No. 16 at 13. Even assuming this is true, LeTourneau does, in fact, use qualifying language. For example, regarding its commitment to promptly and equitably respond to reports, LeTourneau explains "[t]he time frame for the investigation *generally* is within (i) forty-five (45) calendar days from the assignment of the Investigator" and "the University will *strive to* complete the initial investigation in this 45-day time frame[.]" ECF No. 13, Ex. B at 29 (emphasis added). Regarding LeTourneau's commitment to take appropriate action, the crucial language comes after the language Jane Doe chooses to italicize in her Response; LeTourneau only states that it "will . . . take appropriate action or discipline against any person *who is found to have violated this policy*." ECF No. 13, Ex. A at 104. This language makes clear that not all student-respondents will receive discipline. Moreover, all the alleged promises made by LeTourneau in its Handbook and Title IX Policy are made in the context of the overarching presumption of non-responsibility. *See* ECF No.13, Ex. B at 51 ("The presumption is that the respondent is not responsible for a Policy violation."). This language also notifies complainants that not all student-respondents will receive discipline, since discipline will not be appropriate in cases where the presumption of non-responsibility prevails. Finally, LeTourneau's Handbook and Title IX Policy each contain overarching qualifying language stating the Handbook and Policy may be amended by LeTourneau at any time, without

student input. *See* ECF No. 13, Ex. A at 4; ECF No. 13, Ex. B, at 1. This qualifying language demonstrates that the statements are not sufficiently definite to reasonably induce or forebear significant action.[2]

### C. Jane Doe does not plausibly allege detrimental reliance.

In defending her allegations of detrimental reliance, Jane Doe asserts "the question is not what [she] would have done with or without certain assurances" made by LeTourneau. ECF No. 16 at 16. But that is exactly the question. Texas case law is clear; to establish detrimental reliance, a plaintiff must show a material change in position in reliance on the defendant's promise. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). A plaintiff must establish she would not have taken an action, or would have taken an action she avoided, but for the promise. *Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("Failure to seek another job is insufficient because Sandel must show that *but for the letter*, he would have stopped working for ATP[.]") (emphasis added); *Trevino & Associates Mech., L.P. v. Frost Nat. Bank*, 400 S.W.3d 139, 147 (Tex. App.—Dallas 2013, no pet.) ("Continuing to deposit money in its operating account does not amount to a material change in TAM's position *as a result of Frost Bank's promise*.") (emphasis added).

Jane Doe's conclusory and speculative allegations do not plausibly answer whether she would have acted or refrained from acting but for LeTourneau's alleged promises. She asserts in her Response that "[a]s a young female, she would never have remained at [LeTourneau] knowing that, should she be sexually assaulted, the University would not honor its Title IX commitments and would work to ensure that her rapist avoided consequences."[3] ECF No. 16 at 14. But this argument does not

---

[2] For nonbinding, but persuasive, authority on this point, the Court may consider *Doe v. University of Chicago*, No. 16 C 08298, 2017 WL 4163960 (N.D. Ill. Sept. 20, 2017). The court in this case found language in a student manual stating policies were subject to change "at the sole discretion of the University" indicated the alleged promises were not sufficiently unambiguous to support promissory estoppel. *Id.* at *10.

[3] Jane Doe concedes in her Response that her allegations fail to plausibly show she relied on statements in LeTourneau's Handbook or Title IX Policy when deciding to apply and enroll as a student. *See* ECF No. 16 at 15. Her only remaining

4

address the correct question. The state of affairs that would exist but for LeTourneau making the alleged promises is not Jane Doe discovering LeTourneau will not honor Title IX. The absence of a policy or statement in a handbook does not equate to a policy or statement of noncompliance. LeTourneau is obligated to follow Title IX and its implementing regulations regardless of statements in its policies and Handbook. Thus, Jane Doe reveals it is not the presence or absence of alleged promises in the Handbook or Title IX Policy that caused her to remain at LeTourneau; her decision to remain at LeTourneau—and whether she would regret that decision in hindsight—apparently depended on whether, following the required Title IX investigation and decision making process, she would agree with the ultimate hearing decision.[4]

## II.     Jane Doe does not state a claim for common law fraud.

Jane Doe accuses LeTourneau of applying a heightened pleading standard to her fraud allegations. ECF No. 16 at 18. On this point, Jane Doe is correct. LeTourneau asks this Court to apply a heightened pleading standard to common law fraud claims, because that is black letter law. Under Federal Rule of Civil Procedure 9(b), while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally[,]" a party "must state with *particularity* the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b) (emphasis added). This heightened standard applies to state common law fraud. *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th

---

argument regarding detrimental reliance for both her promissory estoppel and fraud claims is that she relied on the statements when deciding to remain at LeTourneau rather than transfer.

[4] In the background sections of her Amended Complaint and her Response, Jane Doe asserts that she was drawn to LeTourneau based on the University's embrace of "Christian values[.]" ECF No. 11, ¶ 5; ECF No. 16 at 6. To the extent Jane Doe attempts to allege that LeTourneau's statements endorsing Christian values are promises for purposes of her promissory estoppel claim, or false representations for her fraud claim, this Court does not have jurisdiction to consider her claims. Under the ecclesiastical abstention doctrine, courts do not have jurisdiction to decide disputes involving inherently religious matters or claims that require resolution of "strictly and purely ecclesiastical" questions. *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713 (1976); *see also McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 348 (5th Cir. 2020). Deciding a promissory estoppel or fraud claim based on statements of Christian values would require this Court to weigh in on issues of religious faith and determine whether LeTourneau lived up to Christian values. As such, the ecclesiastical abstention doctrine bars consideration of such claims. *See McRaney*, 966 F.3d at 348 (citing *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 115–16 (1952)) ("'[M]atters of church . . . faith and doctrine' constitute purely ecclesiastical questions.").

Cir. 2009). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty*, 565 F.3d at 207 (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)), cert. denied, 558 U.S. 873, 130 S.Ct. 199, 175 L.Ed.2d 125 (2009)).

Jane Doe's allegations do not meet Rule 9(b)'s pleading standard. For one, she does not allege with particularity that LeTourneau made false representations. Even taken as true, her allegations do not show why the statements were false when LeTourneau issued its Policy and Handbook. Second, Jane Doe does not sufficiently allege that LeTourneau never intended to comply with its Handbook and Policy. Finally, her allegations do not establish detrimental reliance for the same reasons as her promissory estoppel claim.

    A. <u>Jane Doe does not allege with particularity that LeTourneau made false representations.</u>

Jane Doe argues that LeTourneau made false representations by making statements in its Handbook and Title IX Policy "that it would apply [ ] policies honestly, fairly, accurately, and evenly – without bias based on gender." ECF No. 16 at 16 (citing ECF No. 11, ¶ 141). To defend her allegations that LeTourneau did not apply its Title IX Policy accurately and without gender bias, Jane Doe argues "she has alleged how [LeTourneau] acquitted [John Doe] despite his tacit confession to drugging her and despite being caught lying about his drug use." ECF No. 16 at 18. The "tacit confession" Jane Doe refers to is John Doe's alleged hearing testimony statement that "[w]hen [Jane Doe] realized I was drugging her . . . I mean, thought."[5] ECF No. 11, ¶ 98. As an initial matter, Jane Doe's characterization of this as a "tacit confession" is not a reasonable inference from an allegation that plucks out a single sentence of alleged testimony that may just as reasonably be interpreted as a

---

[5] Jane Doe does not allege in her live pleading that John Doe made a tacit confession to drugging her. She simply presents the sentence of testimony. ECF No. 11, ¶ 98. She argues the Court should interpret this sentence as a "tacit confession" for the first time in her Response.

6

witness correcting himself. While the Court must accept well-pleaded facts as true and draw reasonable inferences, it must "not [ ] strain to find inferences favorable to the plaintiff." *R2Invs. LDV v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). Nor did the panel have the luxury of considering this statement in isolation. Had the panel allowed one single statement (or misstatement) to dictate the outcome, it would have failed in its duty to evaluate all the relevant evidence using the preponderance of the evidence standard. Even if it is true that John Doe made the alleged statement, it simply confirms the panel had to weigh credibility when applying the preponderance of evidence standard. In short, this allegation does not create a reasonable inference that LeTourneau applied its Title IX Policy or Student Handbook with bias against female complainants and thus made a false representation by telling students it would apply its polices evenly and without gender bias, much less that it committed fraud.

Jane Doe also points to her allegation that "the University applied *at least some* pressure on a faculty juror to get them to vote for acquittal." *Id.* Instead of explaining why her allegations about the pressured panel member are not vague, Jane Doe argues she cannot provide additional factual detail without the benefit of discovery. ECF No. 16 at 17. While the Court cannot expect omniscience, Jane Doe must provide enough detail without the benefit of discovery to state the circumstances of the alleged fraud with particularity and sufficiently explain "why the statements were fraudulent." *Flaherty*, 565 F.3d at 207. She alleges the panel member made the comment about feeling pressured to her directly, *see* ECF No. 11, ¶ 100, but nevertheless does not provide any detail at all about the relevant context of the comment. For example, she does not allege when the comment was made, by which panel member, or whether the panel member said anything to explain on what basis they felt pressured. These are all potential details that, taking Jane Doe's allegations as true, should already be within her knowledge. Even under the more lenient plausibility standard, Jane Doe cannot simply provide a vague allegation, claim ignorance, and ask the Court to thrust open the doors to discovery. *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

B. <u>Jane Doe does not sufficiently allege LeTourneau never intended to comply with its alleged promises.</u>

In her Response, Jane Doe does not adequately defend the sufficiency of her allegations that LeTourneau never intended to live up to alleged promises. *See International Bus. Machs. Corp. v. Lufkin Indus.*, 573 S.W.3d 224, 228 (Tex. 2019) (explaining that when the alleged fraudulent representation is a promise to perform future action, a plaintiff must allege the defendant made the promise with no intention of performance). Instead, she again appears to rely on her claim that she is unable to provide more factual detail without discovery. ECF No. 16 at 17 ("without the benefit of discovery, Plaintiff is not able to explore, in greater detail, [LeTourneau's] subjective intents, motivations, biases, and sincerity regarding [its] representations . . . And without discovery, she is not able to examine the pressured faculty juror to get every detail of what occurred."). This argument is unavailing. While "intent, knowledge, and other conditions of a person's mind" do not have to be alleged with particularity under Rule 9(b), Jane Doe's conclusory allegations that LeTourneau never intended to comply with its policies still fail to raise common law fraud. Importantly, "[a]lthough Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (citing *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir.1994)). Instead, plaintiffs must set forth "specific facts supporting an inference of fraud." *Id.* Jane Doe's allegations, such as a vague allegation about a panel member telling Jane Doe they felt pressured, do not set forth specific facts that support an inference of fraud. As explained above, Jane Doe's contention that she has provided all the factual detail within her knowledge is not a credible position, given her allegation that the panel member made the alleged comment to her directly. If this allegation is true, she would have at least some additional detail about the context of the comment.

For these reasons, Jane Doe's allegations amount to conclusory assertions that LeTourneau had fraudulent intent when enacting its policies. Thus, the allegations do not pass muster under Rule

8

9(b).

      C.  <u>Jane Doe's allegations do not support detrimental reliance.</u>

Jane Doe's argument that she plausibly alleges she relied on LeTourneau's statements when deciding not to transfer fail for the same reasons explained for her promissory estoppel claim. Her argument reveals her decision to remain did not depend on the presence or absence of LeTourneau's statements, but instead on LeTourneau's compliance with Title IX obligations that exist independently of such statements.

## CONCLUSION & PRAYER

For the reasons described above and in LeTourneau's Motion to Dismiss, LeTourneau respectfully requests that the Court dismiss Jane Doe's claims against LeTourneau under Rule 12(b)(6).

Respectfully submitted,

*/s/ Holly McIntush*

Holly McIntush
Texas Bar No. 24065721
hmcintush@thompsonhorton.com
Carolyn Adkins
Texas Bar No. 24124057
cadkins@thompsonhorton.com
THOMPSON & HORTON LLP
8300 N. MoPac Expressway, Suite 220
Austin, Texas 78759
(512) 615-2350 – Telephone
(713) 583-8884 – Facsimile

Kathryn E. Long
Texas Bar No. 24041679
klong@thompsonhorton.com
THOMPSON & HORTON LLP
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5515 – Telephone
(713) 583-8884 – Facsimile

*Counsel for LeTourneau University*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion was served upon all counsel of record on October 15, 2025, via the Court's ECF/CMF electronic service system as follows:

Jeffrey T. Embry
jeff@hossleyembry.com
Matt Montgomery
matt@hossleyembry.com
Margaret C. Pennell
meg@hossleyembry.com
HOSSLEY EMBRY, LLP
515 S. Vine Avenue
Tyler, Texas 75702

*Counsel for Plaintiff Jane Doe*

Andrew T. Miltenberg
amiltenberg@nmllplaw.com
Rodman W. Streicher
rstreicher@nmllplaw.com
NESENOFF & MILTENBERG, LLP
363 Seventh Ave., 5th Floor
New York, New York 10001

C. John Scheef
John.scheef@solidcounsel.com
Steven Ovando
steven.ovando@solidcounsel.com
SCHEEF & STONE, LLP
2600 Network Blvd., Suite 400
Frisco, Texas 75034

*Counsel for Defendant Benjamin Murphy*

*/s/ Holly McIntush*
Holly McIntush